**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **GLORIA MS. JOHNSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MINERAL MANUFACTURING CORP.,**<br><br>**Defendant.** | **Case No. __________**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

**COMES NOW** Plaintiff Gloria Johnson ("Ms. Johnson or Plaintiff"), by and through undersigned counsel, brings this action against Mineral Manufacturing Corp. ("Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This action arises from disability discrimination affecting the performance, conditions, and termination of Ms. Johnson's employment relationship, in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117.

## PARTIES

2. Plaintiff Gloria Johnson is an adult woman who resides in Georgetown, Georgia.
3. Defendant Mineral Manufacturing Corp. ("MMC") operates a mineral mining and manufacturing business and employed Ms. Johnson at its facility in Eufaula, Barbour County, Alabama.
4. On information and belief, MMC employed at least fifteen employees for each working day in at least twenty calendar weeks in 2024 or 2025. MMC reports employing approximately forty-eight employees at its Eufaula facilities.

5. MMC is an employer engaged in an industry affecting commerce within the meaning of the Americans with Disabilities Act. It conducts mineral manufacturing operations in Alabama and maintains an administrative office in Pennsylvania.

6. Mr. Harry Jackson ("Mr. Jackson) was Ms. Johnson's direct supervisor. Office Manager Ms. Lucy Miller handled communications with Ms. Johnson concerning her employment benefits and medical absence on MMC's behalf. The conduct attributed to Mr. Jackson and Ms. Miller below occurred in their work for MMC.

**JURISDICTION**

7. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Ms. Johnson's claims arise under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117.

**VENUE**

8. Venue is proper in the Middle District of Alabama under 42 U.S.C. § 2000e-5(f)(3), as incorporated by 42 U.S.C. § 12117(a), because the challenged employment practices occurred at MMC's Eufaula facility and Ms. Johnson would have continued working there but for those practices.

9. Assignment to the Northern Division is proper because Barbour County is within this Court's Northern Division.

**ADMINISTRATIVE PREREQUISITES**

10. Ms. Johnson submitted a verified charge of discrimination against MMC to the Equal Employment Opportunity Commission, Charge No. 420-2026-01062, dated December 22, 2025. The charge identifies disability discrimination arising from her medical absence, replacement, and termination in September 2025.

11. The scope of the EEOC investigation covered, but was not limited to, disability accommodations request, restrictions, notice of disability, and the interactive process.

12. On August 18, 2026, the EEOC issued a Determination and Notice of Rights concerning that charge, dismissed the charge, and notified Ms. Johnson of her right to sue MMC.

13. Ms. Johnson has satisfied the administrative conditions precedent to bringing the claims pleaded in this Complaint.

**FACTUAL ALLEGATIONS**

14. MMC hired Ms. Johnson on March 3, 2016. Her work included driving a forklift and performing laboratory duties.

15. Before her medical absence in May 2025, Ms. Johnson had performed her work for MMC for more than nine years and possessed the experience and skills required for that work.

16. On May 24, 2025, Ms. Johnson was injured in an automobile accident outside work and sustained injuries to her neck and back.

17. Following the accident, Ms. Johnson experienced neck pain radiating into her left arm, left shoulder pain, and tingling in her fingers. Her treating provider diagnosed cervical radiculopathy.

18. During her recovery, Ms. Johnson's cervical impairment substantially limited the normal operation of her neurological and musculoskeletal functions. The impairment caused persistent neck pain radiating into her left arm, shoulder pain, and tingling in her fingers, and required treatment and a medically directed period away from work.

19. Ms. Johnson required medical leave while receiving treatment and undergoing evaluation of her cervical condition.

20. On or about May 27, 2025, Ms. Johnson informed Mr. Jackson that she had been in an accident, was injured and hurting, and could not report to work. Mr. Jackson instructed her to keep in touch with him.

21. During her absence, Ms. Johnson kept Mr. Jackson informed that her injuries prevented her from returning to work and that she remained under medical care.

22. When Ms. Johnson offered to have her brother deliver medical excuses because she could not drive, Mr. Jackson told her to bring the paperwork when she returned.

23. On June 9, 2025, Ms. Johnson contacted Ms. Miller for assistance with short-term and long-term disability benefits following the accident. Ms. Miller responded with information concerning those benefits.

24. On August 22, 2025, Ms. Miller contacted Lincoln Financial on Ms. Johnson's behalf about the interruption of disability benefits and reported that Ms. Johnson said she had submitted the requested physician documentation.

25. On August 26, 2025, Ms. Miller wrote to Lincoln Financial to clarify that Ms. Johnson worked as both a laboratory technician and a forklift operator in multiple MMC facilities.

26. On August 25, 2025, Ms. Johnson's treating provider issued a work-status report identifying cervical radiculopathy and directing that she remain out of work until September 8, 2025, the scheduled date for review of her MRI results.

27. On August 29, 2025, Ms. Johnson emailed Ms. Miller the medical documents concerning her MRI and continued absence, including the appointment schedule and the work-status report. The schedule identified a September 4 MRI and a September 8 appointment to review the results.

28. Through her communications with Mr. Jackson and Ms. Miller and the work-status report sent to Ms. Miller, Ms. Johnson requested that MMC continue her medical leave while she completed the scheduled evaluation and obtained clearance to return to work.

29. Ms. Johnson underwent the MRI on September 4, 2025. The report documented cervical spinal stenosis and foraminal narrowing in conjunction with her radiating neck and arm symptoms.

30. On the evening of September 8, 2025, Ms. Johnson emailed Ms. Miller that she had undergone the MRI and did not need surgery.

31. On September 9, 2025, Ms. Johnson spoke with Mr. Jackson at MMC's Eufaula facility regarding her return to work. Mr. Jackson told Ms. Johnson that MMC had filled her position, that she had been absent too long, and that MMC was laying her off.

32. MMC treated Ms. Johnson's employment as ending effective September 8, 2025, although MMC did not communicate that decision to Ms. Johnson until September 9, 2025.

33. Before MMC communicated its decision, Ms. Johnson had kept MMC informed of her medical condition, her scheduled MRI, and her September 8 medical evaluation.

34. On September 9, 2025, following her medical appointment, Ms. Johnson visited MMC, provided updated medical documentation, and advised MMC that she could return to work on September 15, 2025.

35. MMC did not reinstate Ms. Johnson or permit her to return to her former position after September 15, 2025.

36. Before ending Ms. Johnson's employment, MMC did not ask Ms. Johnson whether her anticipated return date had changed after the September 8 evaluation, whether a brief extension of leave would allow her to return, or whether another temporary arrangement could preserve her position until she received final medical clearance.

37. Ms. Johnson lost wages and employment benefits after she was able to return to work. The loss of her employment also caused financial hardship and emotional distress.

**COUNT I**
**FAILURE TO ACCOMMODATE**
**42 U.S.C. § 12112(b)(5)(A)**
*Against Defendant*

38. Ms. Johnson incorporates paragraphs 1 through 37 as if herein alleged in this count.

39. Ms. Johnson's cervical radiculopathy and associated cervical condition constituted an actual physical disability under 42 U.S.C. § 12102(1)(A). As alleged in paragraphs 13–18 and 26, the impairment substantially limited the operation of her neurological and musculoskeletal functions, which are major bodily functions.

40. Ms. Johnson possessed the experience and skills required to operate a forklift and perform her laboratory duties, having performed that work for more than nine years. With a reasonable continuation of medical leave through September 15, 2025, she could resume those essential duties without restrictions.

41. Through her communications with Mr. Jackson and Ms. Miller and the medical documents she provided to MMC, Ms. Johnson requested continued medical leave while she completed the MRI and the September 8, 2025, follow-up evaluation. She identified her cervical condition, explained that it prevented her from returning to work, and provided medical documentation directing that she remain out of work pending that evaluation.

42. MMC knew of those disability-related limitations and the request for continued medical leave through Mr. Jackson's communications with Ms. Johnson and Ms. Miller's receipt of the medical information described above and communications involving the status of Ms. Johnsons short-term and long-term disability benefits. Mr. Jackson knew that Ms. Johnson's continued absence resulted from her injuries and medical care; Ms. Miller handled her disability-benefit communications and received the dated evaluation schedule and no-work instruction.

43. The requested accommodation was a finite continuation of medical leave while Ms. Johnson completed the scheduled evaluation and obtained medical clearance to return to her existing position. MMC had notice that Ms. Johnson's next scheduled medical step was the September 8 evaluation.

44. MMC denied the accommodation by ending Ms. Johnson's employment effective September 8 and refusing to permit her return. When Ms. Johnson discussed returning with Mr. Jackson on September 9, he said that her position had been filled and she had been out too long. MMC did not discuss a short continuation of leave with her before ending her employment.

45. Furthermore, MMC had received additional medication information concerning Ms. Johnson's disability and leave as early as August 29 through her communication with Ms. Miller.

46. The denial adversely affected Ms. Johnson's employment by causing the loss of her position and preventing her resumption of paid work when she could return on September 15. Had MMC continued her leave through that date and permitted her return, she could have resumed her essential duties and earned her wages and benefits.

47. Continued leave under these circumstances was a reasonable accommodation that could have been provided without undue hardship. By denying that accommodation of Ms. Johnson's known disability-related limitations and thereby ending her employment and preventing her return to paid work, MMC violated 42 U.S.C. § 12112(b)(5)(A), read with § 12112(a).

48. MMC's violation caused Ms. Johnson lost compensation, lost benefits, emotional distress, and other compensable harm.

**COUNT II**
**DISCRIMINATORY DISCHARGE**
**42 U.S.C. § 12112(a)**
*Against Defendant*

49. Ms. Johnson incorporates paragraphs 1 through 37 as if herein alleged in this count.

50. Ms. Johnson had an actual disability and a record of disability under 42 U.S.C. § 12102(1)(A) and (B). Her cervical impairment substantially limited normal neurological

and musculoskeletal functioning through the radiating pain and sensory symptoms alleged above; the associated medical records documented her condition and need for a medically directed absence.

51. Ms. Johnson was qualified to perform her forklift and laboratory work with the reasonable continuation of medical leave described in paragraphs 23–26 and 30–33. She had more than nine years of experience performing that work and could resume its essential duties without restrictions beginning September 15, 2025.

52. MMC knew that Ms. Johnson's absence resulted from her physical impairment and treatment. Mr. Jackson received her injury-related updates and instructed her to keep in touch; Ms. Miller communicated concerning her disability benefits and received the August 29 medical documentation identifying the cervical condition and September 8 evaluation.

53. MMC discharged Ms. Johnson effective September 8 and refused to allow her to resume her position. Mr. Jackson explained on September 9 that MMC had filled her job and she had been out too long. He made that explanation in response to Ms. Johnson's discussion of returning from the medical absence about which she had kept MMC informed.

54. MMC ended Ms. Johnson's employment after learning that her medical condition required continued leave pending her September 8 evaluation, replacing her while she remained on that leave, and informing her that she had been absent too long. MMC's stated reason directly linked the decision to the disability-related absence for which Ms. Johnson had sought continued leave.

55. Alternatively, MMC regarded Ms. Johnson as having a physical impairment and discharged her because of that actual or perceived impairment, as reflected in its knowledge of her injury-related absence and Mr. Jackson's explanation that she had been out too long. This alternative theory concerns discriminatory discharge under 42 U.S.C.

§§ 12102(1)(C), 12102(3), and 12112(a). Ms. Johnson seeks reasonable accommodation under Count I based on her actual disability and record of disability.

56. MMC's discriminatory discharge violated 42 U.S.C. § 12112(a) and caused Ms. Johnson lost compensation, lost benefits, emotional distress, and other compensable harm.

## PRAYER FOR RELIEF

Ms. Johnson requests that the Court:

A. Enter judgment in Ms. Johnson's favor against MMC on each claim established by the evidence;

B. Award back pay and lost employment benefits, together with prejudgment interest, in amounts established by the evidence;

C. Order reinstatement to Ms. Johnson's former or an equivalent position, or award front pay in lieu of reinstatement if reinstatement is inappropriate;

D. Award compensatory damages for emotional distress and other compensable losses, subject to applicable statutory limits;

E. Award punitive damages to the extent the evidence establishes the statutory requirements and subject to applicable statutory limits;

F. Award reasonable attorney's fees and recoverable litigation expenses and costs under 42 U.S.C. § 12205;

G. Award post-judgment interest as permitted by law; and

H. Grant other just and proper relief, without duplicate recovery for the same injury.

## DEMAND FOR JURY TRIAL

Ms. Johnson demands a trial by jury on all issues so triable.

14/11/2026

Respectfully submitted,

Willie E. Scott, Jr. (Nov 14, 2026 14:11:26 CST)

Willie E. Scott, Jr. (ASB-1480-U15W)
**AVENTUS LAW, PLLC**
324 Commons Drive, Suite 34
Birmingham, Alabama 35209
Telephone: (205) 210-8533
willie@aventustoday.com

Jasmine Walker
Jasmine Walker (Nov 14, 2026 14:09:58 CST)

Jasmine Walker
**J. WALKER ATTORNEY AT LAW, LLC**
445 Dexter Avenue, Suite 4050/PMB 281
Montgomery, Alabama 36104
Telephone: (334) 801-2074
jwalker.attyatlaw@gmail.com
*Counsel for Plaintiff*

# Gloria Johnson Complaint

Final Audit Report 2026-11-14

| | |
|---|---|
| Created: | 2026-11-14 |
| By: | Willie E. Scott, Jr. (willie@aventustoday.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAnIBbuE0EAPR7POzKZPu3JyGRWyXIzw5k |

## "Gloria Johnson Complaint" History

Document created by Willie E. Scott, Jr. (willie@aventustoday.com)
2026-11-14 - 6:00:15 PM GMT- IP address: 62.106.78.219

Document emailed to Jasmine Walker (jasminesamaira@gmail.com) for signature
2026-11-14 - 6:00:19 PM GMT

Email viewed by Jasmine Walker (jasminesamaira@gmail.com)
2026-11-14 - 8:08:00 PM GMT- IP address: 74.125.215.162

Document e-signed by Jasmine Walker (jasminesamaira@gmail.com)
Signature Date: 2026-11-14 - 8:09:58 PM GMT - Time Source: server- IP address: 72.135.40.136 - Signature Appearance Selected: TYPE

Document emailed to Willie E. Scott, Jr. (willie@aventustoday.com) for signature
2026-11-14 - 8:09:59 PM GMT

Email viewed by Willie E. Scott, Jr. (willie@aventustoday.com)
2026-11-14 - 8:10:28 PM GMT- IP address: 66.249.88.97

Document e-signed by Willie E. Scott, Jr. (willie@aventustoday.com)
Signature Date: 2026-11-14 - 8:11:26 PM GMT - Time Source: server- IP address: 62.106.78.219 - Signature Appearance Selected: DRAW

Agreement completed.
2026-11-14 - 8:11:26 PM GMT